STOKES, Respondent, v. RABENBERG, et al, Appellants.

(227 N. W. 466.)

(File No. 6402.   Opinion filed November 19, 1929.)

See, also, 51 S. D. 493, 215 N. W. 492.

*Harold W. King* and *Otto L. Kaas,* both of Britton, for Appellants.

*Max Stokes,* of Aberdeen, for Respondent.

FULLER, C. The question here is whether a certain conveyance of a half section of land by Henry J. G. Rabenberg, defendant, to his son Will Rabenberg, defendant and appellant, was made for the purpose and with the intent of hindering, delaying, and defrauding the plaintiff, Guy L. Stokes, a creditor, who is respondent here. Upon trial below the transfer was found to have been without consideration and in fraud of creditors. Inasmuch as we are convinced that the decision below is without adequate support in the evidence and is contrary to the clear preponderance of the evidence, some pains will be taken in a discussion of the proof.

Unlike a tradesman with numerous creditors, the debtor in this case is a farmer, and his only debt is that owing to plaintiff. On September 16, 1919, the plaintiff sold the defendant Henry J. G. Rabenberg a quarter section of land in Marshall county, which was located from 1½ to 2½ miles from the farm home of

the purchaser. The sale was made on a contract for deed in accordance with which Rabenberg paid Stokes the sum of $2,466.53 in money, and assumed a mortgage against the tract of $7,000 and gave to plaintiff a promissory note in the sum of $3,850, which was payable about December 15, 1923. It is to be remarked, as an evidentiary circumstance, that the effect of this transaction was to render the purchaser's interest in the quarter section of land security for the payment of the note. Thus, if the property was worth the price at which it was sold, by plaintiff to defendant, the plaintiff's note was adequately secured at the time it was given.

Rabenberg (whom, by that name, we shall herein distinguish from Will Rabenberg) failed to pay the note when it was due, and the plaintiff, Stokes, took judgment thereon February 11, 1924, for the sum of $4,132.65, no part of which has been paid. An execution on this judgment was returned unsatisfied.

On December 17, 1923, the deed in controversy went of record. It purported to have been executed by Henry J. G. Rabenberg and his wife, Julia Rabenberg, grantors, to Will Rabenberg, grantee. It recited a consideration of $9,600 for the half section of land described in the deed—a different tract than that purchased by Rabenberg from plaintiff. It was dated March 24, 1915, and purported to have been acknowledged by the above-named grantors on that date before M. J. Stavin, a notary public. At the time of trial Julia Rabenberg was dead, and Henry J. G. Rabenberg, being afflicted with palsy, did not testify. As to him the trial court found that: "The elder Rabenberg has for some time prior to 1918 been afflicted with palsy to such extent that such disease left the defendant in the condition whereby his hands shake and tremble, and that his condition was such that for many years prior to the trial of this action he required the assistance of different members of his family to assist in carrying out the ordinary business transactions."

According to the testimony of Will Rabenberg the deed was executed by the grantors, his father and mother, in the office of the notary, who was county judge of Marshall county; the deed having been there drafted upon a typewriter by Judge Stavin. The witness further testified that he took the deed after it was executed and carried it to the home of his parents, where he lived with them, and that it was placed in a bureau drawer; that, according to the understanding had at the time, he was to be entitled to the deed

after he had made payment of the consideration of $9,600. That consideration was made up of $3,000 as the agreed value of services theretofore performed by him on the farm of his father, and $6,600 evidenced by 10 promissory notes of $660 each payable March 24, 1925. It was also understood that the son should care for his parents as long as they lived. The theory of plaintiff in the trial below was that this deed was fabricated and forged shortly before its record on December 17, 1923, and, without a direct finding upon the question of forgery, it is evident from findings, which are somewhat contradictory, and somewhat vague, that the trial court did not consider the instrument genuine, according to its purport. One finding is that: "If the deed purporting on its face to be signed by Henry J. G. Rabenberg was ever in fact signed by him, the same was executed for the purpose of defrauding, hindering and delaying creditors in the collection of their claims."

Not only is the trial court's doubt of the true execution of the instrument thus expressed, but the deed must have been considered in some manner fabricated to suggest the idea that it was made for the purpose of defrauding creditors. For, according to its purport, it was executed March 24, 1915, 4½ years before the note of $3,850 was given the plaintiff creditor. Notwithstanding the above-quoted finding, it was further found by the trial court that: "On the 24th day of March 1915 a warranty deed purporting upon its face to convey the above described real estate to the defendant, Will Rabenberg, for a specified consideration of $9600 and purporting also to be signed by Henry J. G. Rabenberg and wife, was placed in the possession of defendant, Henry J. G. Rabenberg, and at all times by him kept undisclosed never having been recorded until approximately eight years thereafter and on the 17th day of December, 1923."

It is here that we approach the first and most important circumstance of fact in the case. The plaintiff introduced the testimony of two handwriting experts, who, by comparison of other signatures with that upon the deed, declared that the deed was not executed by Henry J. G. Rabenberg; and it is to be granted plaintiff that there is no satisfactory explanation as to the time or occasion when, or the person by whom, the initials "J. G." were written into the signature. There is also argument that a person in the feeble health of Henry J. G. Rabenberg, whose hands shook and

trembled, could not have signed in the clear and definite manner in which his signature purports to have been attached to the deed. Nevertheless, as it seems to us, this theory and testimony of forgery has been unreasonably allowed to color the appellant's claim of good faith and has produced a serious obliquity of thought. Some motive and reason for a fraudulent act is usually exhibited in connection with the charge of fraud. There was no substantial reason, here, consistent with a fraudulent design, for a forgery to have been accomplished. There is no definite proof that Rabenberg was unable to write his name, with or without the assistance of others, and it is certain that he was able to have signed the deed in 1915 when it purports to have been executed.

We have before us the extraordinary situation of a debtor being charged with a fraudulent conveyance of his property by deed, which deed, it is said, was not signed by him, but forged. Moreover, that deed, it is found, was in the possession of the grantor-debtor for 8 years. If forgery there was, it must have been without violence to the wishes of the one whose name was forged—the alleged moving conspirator in a design to defraud his creditors by means of his signature to the deed.

Beneath superficial generalities with respect to the charge of fraud, based largely upon the theory of forgery, there are definite discernible and important circumstances which do not seem to have received that consideration, by the trial court, which we believe they merit. First in significance, is the proof undisputed of the execution and delivery by Will Rabenberg to his father of 10 promissory notes, in 1915, totaling $6,600, which were given for the purpose undisputed, of paying for this land. Upon these promissory notes there was written, in the handwriting of Julia Rabenberg, indorsements of the payment of the notes and the date of payment; these indorsements being made from time to time as the notes were paid by Will Rabenberg. No effort was made to impeach the verity and significance of the indorsements on these notes by Julia Rabenberg; the first indorsements being dated March 24, 1916, although handwriting experts were available at the trial and at least one basis for comparison was in evidence between her handwriting on the notes and on the deed. As to her signature upon the deed there is proof removed from all reasonable doubt, as hereinafter shown. Due to the ill health of Rabenberg, his wife cus-

tomarily attended to his business matters. Julia Rabenberg died November 25, 1923, having herself been ill for several years and in hospital three months before her death.

There is no logical nor rational means by which the entire transaction of the conveyance of the property to Will Rabenberg in 1915 can be swept aside without overturning, in the process, the proof of the making and delivery of these 10 notes by Will Raben-berg to his parents and the indorsement of payment thereon over a long period of time. The record does not supply, nor might con-jecture suggest, any reason for the accepted verity of the note transaction, save the fact of the transfer of this property in 1915 just as Will Rabenberg testified.

Of like importance is the testimony of the notary pub-lic who drafted and took the acknowledgment upon the deed in 1915. He prepared the deed by use of his typewriter, took the acknowledgment of the grantors, and wrote below the acknowledg-ment these words: "My commission expires May 23, 1917"—a date approximately two years before the note was signed by reason of which plaintiff now occupies the position of creditor. Judge Stavin as a witness is shown to be without interest in the subject-matter. Not by the slightest implication does there appear an impeachment of his testimony, while the theory of fabrication of the deed in-volves the assumption that this witness falsely wrote in the date of expiration of his notary's commission when that indorsement was unnecessary to the validity of the deed. When first called to the stand this witness evinced a lack of specific recollection of the transaction of the making and execution of the deed and was con-servative, guarded, and apparently neutral in his statements. Later his recollection was revived by other testimony, heard from the stand, concerning incidents surrounding the drafting of the deed. Positively he then recalled his preparation of the deed and the signing of the deed by Julia Rabenberg. If some uncertainty may be said to exist in his recollection of the signature of Rabenberg, that uncertainty is minimized in importance by circumstances now mentioned. The certificate of acknowledgment of the deed was proof of its execution by Henry J. G. Rabenberg as well as by Julia Rabenberg, and the admission by the notary of lack of recol-lection of all or any part of the transaction is no contradiction of the facts established prima facie by the acknowledgment. Although

the initials "J. G." may have been added after Rabenberg signed his name, that fact cannot impair the proof that he did sign and acknowledge the deed. Whether he signed is one matter; how he signed is another. The fact, established by the findings, that Rabenberg had the deed in his possession for 8 years renders fanciful the claim that the deed was not signed by him or, at least, for him and with his knowledge and consent.

■ Another circumstance which seems to justify at least casual reference is that all the farm buildings of Rabenberg were located upon one of the two quarter sections covered by the deed. There, during all the years mentioned in this record and for some years before, Rabenberg made his home. That quarter section was, presumptively, the homestead of himself and wife. Within limitations well known and established, Rabenberg and his wife had the right indisputable to grant or give it away without resorting to contrivances of ·fraud.

■ We now turn to the fact that the deed in question was withheld from record from the time of its execution in 1915 until December 17, 1923. It is clear that this circumstance was taken by the learned trial court as indicative of fraud on the part of the defendants. But whether there was fraud depends largely upon the question whether the withholding of the conveyance from record was out of the ordinary course. This is not the case of a delivered conveyance being designedly concealed through agreement of the parties. It is, rather, an instance of no deed having been delivered, according to the agreement of the parties, until shortly before its record. It was not unusual, but, on the contrary, consistent with the way of ordinary business that this deed should not be delivered until the notes of $6,600 were paid. The concealment or failure to record a deed is often referred to as a means of determining whether the making and delivery of the instrument, in the first instance, was with fraudulent intent. But in this case we take it as a fact established by a clear preponderance of the evidence that the deed was made and executed more than 4 years before plaintiff became a creditor of the grantor. If the original transaction was in good faith, the signing by Rabenberg of the note to plaintiff, in 1919, did not impose a new duty on the grantors and grantee to have the deed recorded, or to change their contract

by which the deed was not to be delivered until the consideration was paid.

■ There is a prodigality of other evidence relating to the disposition of the proceeds of crops from this land over a period of several years, the bank deposit of those proceeds in the name of Will Rabenberg, the accumulation and deposit of a total of $22,000 during a like period, by Henry J. G. Rabenberg, and the withdrawal thereof, the sale or disposition of all of the personal property belonging to the debtor and the payment of taxes upon the land in question in his name rather than the name of Will Rabenberg. Without the fact of forgery or fabrication of the deed, we find no justification in this additional evidence for a finding of fraud in the making of the deed. Much of that evidence discloses a course of business conducted by and between the parents and the son confirmatory of the fact that some transaction of the kind here proven must have taken place between them years before this controversy arose. The fact, too, that witnesses testified to a value of $22,000 to $25,000 in the property is no proof of actual fraud if, as we repeat, the contract for the conveyance was made years before plaintiff became a creditor and before Rabenberg intended to become his debtor.

■ We are, therefor, of the opinion that the findings of actual intent on the part of Henry J. G. Rabenberg to hinder, delay, and defraud the plaintiff, his creditor, are against a clear preponderance of the evidence. No other theory than that of actual fraud is pleaded or considered in the argument. The judgment and order appealed from are accordingly reversed.

SHERWOOD, P. J. and POLLEY, BURCH, and BROWN, JJ., concur.

CAMPBELL, J., concurs in the result.